**SEWARD et al. v. FAGAN.**

**No. 7488.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 9, 1935.

Hilton S. Hampton and John W. Bull, both of Tampa, Fla., for appellants.

Donald C. McMullen, of Tampa, Fla., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The decree appealed from was entered after all defenses and pleas in two answers had been stricken, and leave to file a third answer had been denied. Appellants were sued as administrators and individually on a written agreement between one Albert E. Bennett and the defendants, which was attached to the petition.[1]

The bill, brought May 19, 1932, on the agreement, after undertaking to summarize it, alleged: "That thereby the defendants became trustees of said business for the benefit of said Albert E. Bennett, and are subject to the jurisdiction of a court of equity for the faithful execution of the trust." It then alleged the assignment of the contract from Bennett to the bank, that adequate time

---

[1] "This agreement, entered into February 23, 1931, recited that Seward in his lifetime had sold Bennett his dry goods business, retaining a purchase money lien for $18,000. That one of the understandings was that Bennett could, if he became dissatisfied, deliver the business back to Seward, Seward to cancel the notes, account to Bennett for any differences in stock and assume the liability of any unpaid account for merchandise Bennett had actually purchased." It then recited Seward's death, the appointment of defendants as administrators, their calling on Bennett to pay the $18,000, his inability to do so and that the administrators would recognize Seward's agreement and take the stock back under it. It recited, further, the inventory value of the business as $27,823.26, Bennett's debt to the estate as $18,403.54, to jobbers, $2,427.79, "a total of $21,471.85, leaving a balance of $6,-689.89 of equity in the business due to the first party under said agreement." It then provided that Bennett delivers the stock and fixtures, that the administrators cancel the notes and rent, and assume the amount due to jobbers and "the payment to the party of the first part of $6,689.89."

As to the payment due Bennett under the agreement, paragraphs 4 and 5 provide: "(4) The parties of the second part agree that they are due to the said party of the first part the sum of $6,689.89 and the same is to be paid as follows and not otherwise, to wit:

"The party of the first part is due to the bank $3,300.00 and the parties of the second part agree that as soon as they have taken care of the bills due jobbers that they will next pay to the bank from the next sales derived from the stock of goods, the said note of $3,300.00 and interest from this date. They will keep a strict account of everything sold so that this can be arrived at, and it is understood that they are not personally responsible for this said sum of $3,300.00 but it is to be taken out of, as above stated, the equity of the said party of the first part in the said business.

"5. The parties of the second part agree that after the sale now in progress is concluded, then the said party of the first part, his heirs or assigns, may take from the said business the balance of $3,389.89 due him in stock and fixtures as follow:

"Fixtures to the amount of $950.00 to be designated by the parties of the second part and the balance of $2,439.89 to be paid in stock the same to be selected out of the 'gents furnishing' in clothes, hats, shoes, etc., including however, the Rawlston shoes, all taken at the invoice price this day agreed on."

has been given defendants to sell enough of the goods to pay the bank, that defendants have sold a large part of the stock of goods, and are continuing to sell the same, "and all events have happened by which Bennett became entitled to have delivered to him the fixtures and goods as heretofore alleged." It alleged further that delivery has been demanded of and refused by defendants, and that Bennett is insolvent. There was an allegation that plaintiff "is without remedy in the premises except in a court of equity," a prayer for an accounting, that defendants be required to pay $3,300 and deliver the fixtures, of the value of $950, and goods of the value of $2,439.89, as agreed, and that in the event they have been dissipated, the defendants be required to pay their stipulated value in money. There was a further prayer that should there not be enough funds in the hands of defendants as administrators to satisfy the just demands of plaintiff, that defendants be held individually responsible for breach of trust, and that a decree be entered against them jointly and severally for such part of the amount as plaintiff shall fail to realize out of the fixtures and the goods. That a receiver be appointed to take charge of the fixtures and stock, and keep them pending the suit.

On June 11, 1932, the defendants filed their motion to transfer the cause to the law side, setting up in it that the so-called bill was merely an action at law on a written contract, and that it alleged nothing as a basis for the equitable relief asked. This motion was on September 15 denied. On October 15, 1932, defendants moved to dismiss. The motion, containing twenty-three grounds, some of them to the want of equity in the bill, some of them to the failure to show that the administrators had authority to act as it was alleged they had acted, was overruled.

On the 16th of January, defendants filed an answer. Beginning thus:

"1. Come now the defendants in the above entitled cause by their solicitor, Benjamin H. Webster, and as an answer to each and every the allegations of the Bill of Complaint therein say as follows:

"2. That the defendants admit the execution of said contract as Administrators of the Estate of W. H. Seward, but state. * * *"

It continued through eighteen paragraphs setting out defenses, legal and equitable, and concluding with prayers for appropriate relief. Their answer, in addition to affirmatively alleging that the agreement was not valid because it had been entered into without authority from the probate court, set up the relation of confidence and trust existing between them and Bennett, and that the transaction had occurred and the agreement had been entered into in that confidence. It alleged that the agreement between them and Bennett was in effect that the estimated equity of Bennett in the inventory value was to be realized and determined only by and after a sale of the goods, and was to come to him if, after all charges against the goods, including the expenses of the sale, the interest the estate had in them as evidenced by Bennett's debt to it, and the amount due the jobbers the estate had assumed, were discharged, there was an equity for him. It alleged that if the agreement as written and signed expresses any different understanding, it does so as the result of a mutual mistake, or if not of a mutual mistake, of a mistake on defendants' part deliberately induced by the wrongful representations of Bennett and their reliance upon them. The answer shows that the sale they were to conduct is still incomplete; that from sales already made they have paid the amount Bennett owed the jobbers, not $2,427.79 as he had guaranteed, but $3,022.33; that the total sales of goods had been only $6,581.67; the expenses, insurance, advertising $4,280.23; that they therefore had received nothing for their services, and were already out of pocket, on account of the agreement, $720.89; and that the balance of the stock and fixtures on hand, though inventoried by Bennett as worth more than $4,000, were not worth over $1,000. That they had kept strict account of the sales they had made and were ready to produce it in court. Paragraph 13 specifically alleged:

"13. That these defendants, either as persons or as administrators of the Estate of W. H. Seward, according to the terms and conditions of said contract taking the intent of the parties as gathered therefrom as a whole, are not liable for the payment of any amount to the bank or to said Bennett or his assigns, or to the delivery of any goods or fixtures, until goods have sold for and sufficient money obtained after paying all expenses of selling the same, to pay said amount due to creditors, and to pay the total amount due the W. H. Seward Estate, for principal and interest for the purchase price due and for the rent due at the time of the execution of said contract, as said contract specifically states that defendants are not personally responsible for this

said sum of $3300.00 but it is to be taken out of, as above stated, the equity of the said party of the first part in said business, and it was the understanding of these defendants that only in the event the said goods sold for sufficient to pay all sums due creditors and all sums due the Estate of W. H. Seward, deceased, after paying all expenses of selling, then and only then in that event would anything be paid to the bank or delivered to Bennett from the net sales thereafter, and said contract was entered into with the understanding that that was what said contract provided, and if its terms and meaning were or are otherwise said contract was entered into by mistake and said contract should be reformed so as to state the intention of the parties, if considered otherwise legal."

All of this answer, except the skeleton paragraphs 1 and 2, supra, were stricken on plaintiff's motion. Whereupon defendants, with leave, filed an amended answer pleading more fully their want of authority as administrators, what the real understanding and agreement was, and that if the writing expressed any other it was the result of a remediable mistake. This answer stricken as before, paragraphs 9 and 12 were amended, setting out more fully the circumstances surrounding the making of the agreement in support of the equitable defenses of mistake and misrepresentation and their prayer for reformation. These paragraphs were again stricken.

On May 18, 1934, the defendants, appearing by new counsel, moved for leave to file an amended answer to set forth their defenses. On June 11 leave was denied, and on the same day a final decree was entered for plaintiff not against the estate, or defendants as its administrators, but against the defendants individually.

This decree recites: "This cause came on to be heard at this term upon the allegations of the bill and the admissions of the amended answer after portions of same had been stricken."

It found: "That the defendants, W. C. Seward and Lotta P. Seward, by the contract entered into and made a part of the bill of complaint became trustees for the faithful performance of the promises therein set forth, and that they have failed as such trustees, to perform their promises."

It found that the plaintiff had a lien for $3,300 upon the goods described in the bill; that it was entitled to the fixtures there described in the amount of $950 and goods

to the value of $2,439.89. It ordered that defendants individually pay out of any moneys in their hands arising from the sale of the stock of goods $3,300, with interest, and deliver to plaintiff the fixtures and goods of the values above stated. It further ordered that in the event of their failure to make this payment and delivery, the master in chancery hereafter appointed shall take possession and sell the fixtures and stock, and out of their proceeds first pay his expenses, then pay $3,300, with interest, and then an additional sum of $3,389.89, the inventory value of the fixtures and goods as above. It finally provided that if the sales are insufficient to pay the entire amount herein adjudged to plaintiff, "the defendants shall be held individually responsible for breach of trust, and jointly and severally liable to the plaintiff for all amounts he fails to realize out of the sale of the fixtures and stock."

Appellants complain of the decree entered on plaintiff's petition and the admission left standing in their answer, that they had signed the contract sued on as administrators, as wholly unsupported by the pleadings it purports to rest on. The point they make here is that plaintiff's suit is merely one at law on a contract against them which they made as administrators, with no fact alleged to fix or measure their liability as individuals. That though the bill does ask equitable relief against them as administrators and individuals, it alleges no fact which, taken by itself, would support such relief, nor is it helped out by the answer, for all of its admissions, except the single one above stated, have been stricken from it. They complain too, of the court's action in overruling first their motion to transfer, and then their motion to dismiss the bill for want of equity, and of its orders striking their first two answers and denying them leave to file the third. They insist that if the petition states a cause of action on the contract as it reads, their answer showing that it reads as it does because of remediable mistake should not have been stricken. They argue that because of all of these reasons, and because in results it is unjust, the decree is erroneous and must be reversed.

We agree with appellants that the decree may not stand. All other reasons aside, it may not stand because there is neither pleading nor proof to support it. It is quite clear that the case plaintiff's petition makes out, if it makes out any, is merely one at law against appellants as administrators on the

contract they made as such. If all the petition alleges had been proved or admitted, and there was in fact no admission except that appellants had signed the contract as administrators, a personal decree would not have been warranted. For while the petition does allege by way of conclusion that the defendants became trustees of the business for the benefit of Bennett, and personally liable, this is only a conclusion without facts to support it; a conclusion directly contrary to the express provisions of the pleaded contract that there was to be no personal liability on defendants. Nor is that part of the decree which orders the stock now in the hands of the administrators to be taken and sold any better supported. For it assumes, in the face of the agreement in the contract sued on, that Bennett should have the stock and fixtures "after the sale now in progress is concluded," to take them for his assignee before. It assumes, too, that the $3,389.89, stipulated as due Bennett in stock and fixtures, is to be taken in money, instead of, as the contract provides, in specified fixtures and specified stock at the invoice prices agreed on. It liquidates these items into a money demand for their face, charging the stock first, and the defendants afterwards, with their payment, and this in the face of the express stipulation of the agreement that the sum of $6,689.89, Bennett's equity, should be paid as provided in the contract, "and not otherwise." Nothing in the contract itself permits such a result; nothing is pleaded; nothing is proven to authorize it. Defendants pleaded as a basis for reforming the contract what the parties really understood and intended about this most unusual, and on the present pleadings, if it works out as plaintiff says it should, most egregiously unjust transaction. They pleaded their relation to and reliance on Bennett, his dominant part in the matter. The general nature of the contract, the circumstances surrounding its making, the unjust enrichment of Bennett which would flow from any other interpretation than that the defendants put on it, lend the strongest color of truth to defendants' claim. This claim is that the transaction was really in the nature of a family matter, entered into simply and in good faith, in the interest of all concerned, to provide for an equity for Bennett subject to and after liquidating the amount due the estate.

In the event of another trial, if plaintiff should amend to state a case either at law or in equity, defendants should be allowed full opportunity to plead and prove their defenses, legal and equitable.

The decree is reversed, and the cause remanded, for further proceedings not inconsistent herewith.